THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HORTON MOTOR LINES, INC., Appellant.

Argued May 26, 1939; decided July 11, 1939.

*Robert C. McCreedy* for appellant.

198

*William C. Chanler*, Corporation Counsel (*Paxton Blair* and *Alan M. Stroock* of counsel), for respondent.

FINCH, J. This is an appeal by leave of a judge of this court from a judgment of the Appellate Part of the Court of Special Sessions of New York City, affirming a judgment convicting the appellant of violating sections 140–142 of chapter 14 of the New York City Code of Ordinances, commonly known as the Public Cart Ordinance. Section 140 provides:

" Definitions. Every vehicle, of whatever construction drawn by animals or propelled by any motor power, which is kept for hire or used to carry merchandise, household or office furniture or other bulky articles within the city, for pay, shall be deemed to be a public cart, and the owner thereof shall be deemed to be a public cartman."

Section 141 divides all public carts into two classes, motor driven and horse drawn. Section 142 requires " payment of the fee hereinafter provided." Section 143 provides that for horse drawn carts the fee is two dollars and for motor driven carts five dollars. (See now Administrative Code of City of New York, L. 1937, ch. 929, §§ B32–92.0–B32–95.0.)

Defendant, a North Carolina corporation, is an interstate motor carrier and is licensed to engage in that activity by the Interstate Commerce Commission, pursuant to the Motor Carrier Act (U. S. Code, tit. 49, §§ 302 *et seq.*). In the course of its operations it employs two kinds of motor trucks, the tractor-trailer type, which is used for long hauls between fixed termini, and smaller trucks to ply between

defendant's terminal in New York city and the customer's door, to pick up or deliver the freight. The large trucks travel over regular routes in contrast to the smaller vehicles, which are for "irregular routes." Where a shipment is sufficiently large to require an entire "regular route" truck, that vehicle will pick up or deliver a load without extra charge if the customer is within New York City Zone 1. The smaller trucks are used to call for the smaller loads at customers' doors and to concentrate them at defendant's New York city terminal, or to distribute to the consignees upon delivery to the terminal by the regular route trucks. If the customer desires he may himself deliver or call for the shipment at the terminal. Whether there is an additional charge for the pickup or delivery service is determined by the origin or destination of the shipment in the following manner:

For the purpose of shipment between the Middle Atlantic States and New York city, the city is divided into three zones. Zone 1 consists of parts of the boroughs of Manhattan, Brooklyn and Queens; Zone 2, of the remainder of Manhattan and all of the Bronx and Richmond; and Zone 3, the remainder of Brooklyn and of Queens. Shipments between the Middle Atlantic States and Zone 1 are picked up or delivered without additional charge. But where the shipment is between the Middle Atlantic States and Zones 2 or 3, there is an additional charge. If the origin or destination of the shipment is the southern area (*e. g.*, Georgia, the Carolinas, etc.), then there is an additional pickup or delivery charge based upon the weight and the borough in New York city to or from which the shipment is made, except that where the load exceeds 15,000 pounds there is generally no additional charge.

The smaller trucks are also employed between defendant's terminal and other carriers to transfer freight passing through New York city. In regard to this kind of shipment there is a single through rate based upon the points of origin and destination, but no portion of the tariff can be definitely allocated to the transfer service.

Defendant was convicted on the testimony of an inspector of the New York City License Department that he had examined an "irregular route" truck of defendant, which was at defendant's terminal loaded with merchandise shipped from Lexington, N. C., and was to deliver the articles to a steamship pier for transshipment to Attleboro, Massachusetts.

The question in this case is whether the Public Cart Ordinance may be applied to defendant's "irregular route" trucks operating in New York city. There is testimony that these trucks are sometimes used to carry merchandise from the New York city terminal to points outside of the state, but that this is done to such an extent as to be considered an established use of the smaller trucks rather than an occasional diversion, is not shown. In any event, such use is not shown to be connected with the particular truck upon which defendant's conviction was based.

Appellant contends that (1) it is not within the scope of section 140, because (a) its vehicles are not "kept for hire," (b) they are not "used to carry merchandise  *  *  * within the city  *  *  *," and (c) they are not "used to carry merchandise  *  *  * for pay;" (2) in any event the ordinance cannot apply to defendant's vehicles because they are engaged solely in interstate commerce.

(1) Whether defendant's trucks are within the scope of the Public Cart Ordinance. It is settled that the Public Cart Ordinance applies only to common carriers. (*People* v. *Bridge Auto Renting Corp.*, 272 N. Y. 637; *People* v. *Heckman Trucking Co.*, 277 N. Y. 480.) It is clear that defendant is a common rather than a private contract carrier. (*Stevenson & Co.* v. *Hartman*, 231 N. Y. 378, 381; *Anderson* v. *Fidelity & Casualty Co.*, 228 N. Y. 475.)

However, defendant is not engaged in a business covered by the ordinance. The ordinance applies to a common carrier who engages in the general business of carrying goods generally for all who desire his services. (*Stevenson & Co.* v. *Hartman, supra.*) This is shown by section 6 of chapter 14 of the Code of Ordinances, which requires

that " a licensee shall at all times render any public services within scope of his license when called upon, unless actually unable so to do." A public cartman, to whom the ordinance applies, holds himself out as rendering a service which is different from that offered by defendant. The former undertakes to carry goods anywhere within the city whenever any one will engage him to do so. Defendant does not undertake to carry goods within the city for any one who so desires, but only for those who contract to ship goods in interstate commerce.

This ordinance does not attempt to cover a contract between shipper and carrier where State lines are to be crossed. (*Adams Express Co.* v. *City of New York*, 232 U. S. 14.)

Defendant, therefore, is not within the scope of the ordinance.

(2) But even if the ordinance were intended to apply to defendant's smaller trucks, which are used solely in connection with interstate transportation, the ordinance could not constitutionally apply to defendant. It is clear that the smaller trucks are instrumentalities of interstate commerce. " The train, although moving from one point to another in the State of Washington, was hauling merchandise from points outside of the State destined to points within the State and from points within the State to points in British Columbia, as well as in carrying merchandise which had originated outside of the State and was in transit through the State to a foreign destination. This transportation was interstate commerce, and the train was an interstate train * * *." (*Northern Pacific Ry. Co.* v. *Washington*, 222 U. S. 370, 375.) Similarly, carriage by defendant's smaller trucks is interstate commerce and the trucks are interstate trucks.

The facts presented here are distinguishable from the facts in *State of New York ex rel. Penn. R. R. Co.* v. *Knight* (192 U. S. 21), so heavily relied upon by respondent. In that case the taxicab service at the railroad's New York city terminal was available to persons not traveling in interstate

commerce, and was available by contract separate from that with the railroad for the interstate carriage. Defendant's smaller trucks are not available to any but those shipping in interstate commerce and are available only pursuant to a single contract for interstate commerce.

The ordinance in question is one which attempts to license the occupation of public cartmen. Section 1 (ch. 14) provides that no person may engage in any of the activities required to be licensed under that chapter without first. obtaining a license. Section 144 prescribes the rates to be charged by public cartmen. It is clear that whatever may be the limits of a State's power to tax property or activities related to interstate commerce, the State may not require a license as a condition precedent to the pursuing of activities in interstate commerce. (*Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *Sprout* v. *City of South Bend*, 277 U. S. 163.) The ordinance in question is not a tax measure, but is a comprehensive scheme to license the calling of public cartmen. Even if the ordinance were designed solely as a revenue measure, it is doubtful whether it could apply to defendant's smaller trucks. (*Cooney* v. *Mountain States Tel. & Tel. Co.*, 294 U. S. 384.)

The ordinance in the case at bar is not one of the types of taxation or police regulation by the states or municipalities which are permitted under principles well defined. It is not in the nature of a property tax (*Old Dominion S. S. Co.* v. *Virginia*, 198 U. S. 299); nor is it regulation which involves a proper exercise of the police power (*Sprout* v. *City of South Bend, supra,* at 169); nor is it a regulation of an intrastate activity, which may be separable from interstate commerce. (*Coverdale* v. *Arkansas-Louisiana Pipeline Co.*, 303 U. S. 604.)

The case at bar is distinguishable from *Coverdale* v. *Arkansas-Louisiana Pipeline Co.,* (*supra*), where the court upheld a tax upon the use of a compressor to increase the pressure of natural gas to a point necessary to transmit the gas through interstate pipelines. The court said: " Privileges closely connected with the commerce may

be regarded as distinct for purposes of taxation. So, local privilege taxes on storage in transit, compressing or dealing in cotton, already moving in its interstate journey from plantation to mill, are validated as imposed upon operations in connection with a commodity *withdrawn from the transportation movement*" (at p. 610). The ordinance in the case at bar does not levy a tax upon an intrastate activity closely related to interstate commerce, but attempts to tax an integral portion of interstate commerce itself.

It is not necessary to decide whether the operation of the ordinance with regard to the defendant is limited not only by the commerce clause, but also by the enactment of conflicting Federal regulation governing the said field. (Motor Carrier Act, U. S. Code, tit. 49, § 302.)

Since the ordinance was neither drawn to apply to defendant's smaller trucks, nor may it constitutionally subject defendant's smaller trucks to its provisions, the judgments should be reversed and the information dismissed.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Judgments reversed, etc