(No. 31312.—

The City of Chicago, Appellant, *vs*. The Willett Company, Appellee.

*Opinion filed May 18, 1950—Rehearing denied September 18, 1950.*

Benjamin S. Adamowski, Corporation Counsel, and John J. Mortimer, Acting Corporation Counsel, (L. Louis Karton, Louis H. Geiman, Marvin J. Peters, and Arthur Magid, of counsel,) all of Chicago, for appellant.

Daley & Lynch, of Chicago, (Joseph A. Power, George J. Schaller, and Charles D. Snewind, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This cause is heard here on direct appeal from a judgment of the municipal court of Chicago, finding the Willett Company, hereinafter referred to as defendant, not guilty in an action brought by the city of Chicago, which charged said defendant with engaging in the business of a carter within the city of Chicago without first having obtained or paid for a license therefor, in violation of chapter 163, Municipal Code of Chicago.

The cause was heard by the court without a jury. The parties filed a stipulation which, with certain testimony of the executive vice-president of the defendant company, constitutes the record in the cause. The trial court has certified that the validity of a municipal ordinance is involved.

Chapter 163 of the Chicago Municipal Code relates to carters and provides, in brief, that any dray type of vehicle driven or employed for the purpose of transporting or conveying property and merchandise within the city for hire or reward shall be deemed a cart within the meaning of the chapter, whether the vehicle be employed or hired from any public stand, public way, barn, garage, office or other place, or whether it be hired for the day, week, month or year. A license tax is imposed by the ordinance for each cart operated or controlled by every carter according to established fees and schedules.

The foregoing section as passed repeals the prior public carters ordinance as well as the furniture movers ordinance.

The defendant is an Illinois corporation, with its offices in Chicago, and was engaged in the business of transporting property by motor vehicles for hire in the city of Chicago. It operates as a contract carrier of commodities by motor vehicle from points and places within the State of Illinois, to points and places in the States of Indiana and Wisconsin. It further carries property within the city of Chicago from point to point under contract with various firms and other interstate and intrastate carriers entering

the city. It holds itself out to serve the public and connecting carriers and forwarding companies generally up to the limit of its capacity, either (a) by leasing trucks with drivers to shippers by the hour, day, week or year or other period, (b) by making contracts with shippers to perform all trucking for a fixed period, (c) by giving occasional service or handling single shipments in local cartage for any shipper at a rate per hundred pounds, per ton, per piece, or other unit, (d) by distributing pooling cars, and (e) by rendering collection and delivery service, station or substation service, for rail, water and highway motor carriers and forwarding companies, either under contract or on some other basis. It was further stipulated that the motor vehicles operated by the defendant company in the course of a day's business would transport property from points within the city of Chicago to other points within the city of Chicago, from points within the city of Chicago to other points within the State of Illinois outside the city and from points in Chicago to other States surrounding Illinois and return. The defendant did not comply with the provisions of the carters ordinance, arguing that the ordinance was void and of no legal effect because it is in conflict with the constitution of the United States; it is in conflict with the constitution of Illinois; it is in conflict with section 23-51 of the Revised Cities and Villages Act; and it is in conflict with the Illinois Truck Act of 1939, as amended.

The finding of the trial court for the defendant is apparently based on the ground that the application of the ordinance to the defendant carrier's business would create a burden upon interstate commerce and that, therefore, the defendant is exempt from the provisions of the carters ordinance of the city of Chicago.

The argument of the city of Chicago, the appellant here, is to the effect that by the terms of the ordinance, the license fee is restricted to carters doing business "within the city"

and that the natural meaning of those words restricts the ordinance to intracity business and it cannot apply to interstate commerce. In support of this construction, appellant cites *Pacific Express Company* v. *Scibert,* 142 U.S. 339, and related cases. It further argues that the mere fact that the defendant company is engaged in interstate commerce, as well as intrastate and intracity, does not prevent the city of Chicago from imposing an occupation tax upon the defendant with respect to the purely intracity operations in which the defendant is admittedly engaged. To support this view, they cite cases such as *Osborne* v. *Florida,* 164 U.S. 650, *Pullman Co.* v. *Adams,* 189 U.S. 420, and like cases.

The defendant, on the other hand, cites *People* v. *Horton Motor Lines,* 281 N. Y. 196; *Northern Pacific Railway Co.* v. *Washington,* 222 U. S. 370, and *Sprout* v. *South Bend,* 277 U. S. 166, and similar cases for the proposition that the State or municipality cannot tax interstate commerce and, in situations such as the one before the court, the tax violates the constitution of the United States and imposes a burden on interstate commerce. Both parties further argue as to the validity and invalidity of the ordinance in question.

It is the law in this State that this court will give a construction to a statute which will uphold its validity. The presumption is always in favor of the validity of an ordinance passed in pursuance of statutory authority. *City of Chicago* v. *Hebard Express and Van Co.* 301 Ill. 570.

It seems clear that the ordinance in question is not invalid by its terms, but could be held to be so by reason of its application to certain operators of carts, under the definition of the ordinance, in and around the city of Chicago. In other words, the ordinance is not invalid *per se.* It is only upon its application that a question of its constitutionality can arise. In *Pacific Express Co.* v. *Seibert,* 142 U. S. 339, it was said, "'Business done within this

State' cannot be made to mean business done between that State and other States. We, therefore, concur in the view of the court below that it was not the legislative intention, in the enactment of this statute, to impinge upon interstate commerce, or to interfere with it in any way whatever; and that the statute, when fairly construed, does not in any manner interfere with interstate commerce." Thus, we find that the ordinance in question here, when construed in the light of the above language, is invalid only when it is applied to interstate commerce in its fullest sense.

As contended by the city, there is no question but what a license tax may be imposed upon the defendant for its intracity business. In *Osborne* v. *Florida,* 164 U. S. 650, a Florida statute was involved, imposing an annual license tax on all express companies doing business in the State. The Supreme Court of Florida has construed the statute as not applying to interstate business, but only to local business, intrastate in character. The Supreme Court of Florida held the statute to be valid and the United States Supreme Court affirmed this holding, pointing out that the construction of the statute by the Supreme Court of Florida, as applying only to intrastate business, was binding upon it and would be accepted by it. The case is authority for the rule that a statute so construed does not exempt the express company from taxation upon its business which is solely within the State, even though at the same time the same company may do a business which is interstate in character.

However, the mere operation of trucks by the defendant "within the city" is not sufficient to determine the issues here. The legal effect of such operation must be considered.

As we have previously stated, the question here is one of application of the ordinance to the practical aspects of the hauling done by the defendant. In addition to arguing that the statute itself provides only for taxation upon persons transporting property "within the city" and that this

deals only with intrastate business, the city of Chicago admits that where the intracity and interstate operations are inseparable, and the defendant cannot separate the two, nor continue to engage in business if separation is attempted, the argument as to the tax being a burden upon interstate commerce might apply.

It is only when a separation, in fact, of intrastate and interstate business exists that a like separation may be recognized between the control of the State and that of the nation. (See *Osborne* v. *Florida,* 164 U. S. 650, and *Pullman Co.* v. *Adams,* 189 U. S. 420.) The city argues, however, that no inseparability has been shown and that the defendant has not met the burden of proof in this regard. The burden is on him who asserts that, although actually within, the traffic is legally outside the State; unless the interstate character is established, locality determines the question of jurisdiction. *Pennsylvania Railroad Co.* v. *Knight,* 192 U. S. 21.

The only evidence in this record is that of Howard L. Willett, Jr., who is the executive vice-president of the defendant company, and who stated on the stand that his company engaged in interstate, intrastate and local freight in the city of Chicago. It is not clear from the testimony or the questions asked of Willett whether or not he was familiar with the legal meaning of the term "intercity freight." It is apparent that the Willett Company operates from Chicago to surrounding States and in that manner engages in interstate commerce. They also engage as a contract carrier with other carriers coming into the city of Chicago from outside the State of Illinois. Whether or not by intercity operation Willett meant only that his trucks operated within the city of Chicago is another thing. The record is silent on that point.

He did testify that it was not possible to separate the intrastate freight from the interstate freight and the intercity freight hauled by the defendant. He further stated

that defendant could not keep records of the shipments it made each day within the city of Chicago as to interstate, intracity or intrastate character.

It appears, insofar as we can ascertain from this record, that the defendant herein operates its trucks under contract with large industries, and, in the main, with other interstate carriers bringing property into the city of Chicago. The defendant itself does not determine what articles it shall carry on its trucks, but carries articles of all kinds, in interstate, intrastate and intracity traffic. It has no basis for differentiating between the shipments which it carries on its trucks, but carries what is given it by the contractor, retailer, or carrier with whom it is dealing, and on every load the three types of property are so intermingled as to be impossible of separation. It is apparent from these statements that the type of business done by the defendant herein is not one generally considered to be within the meaning of a carter's ordinance. The defendant does not keep records of the shipments because he does not handle the shipments as such. He does not go from house to house picking up shipments for delivery within the city of Chicago, but his entire business is concerned with hauling under contract for various firms, enterprises and other contract carriers in the city of Chicago.

The cross-examination by the city of Chicago did not counteract the statements of this witness, and his statements as to nonseparability remained unchallenged in the record. All of the trucks, over 1200 of them, are engaged in the type of work which has been described. It was evident that the type of contracts the defendant has with other companies deals mainly with other carriers. The defendant has contracts with the Pennsylvania Railroad, Acme Fast Freight, Air Cargo, Ryerson Steel, U. S. Steel, Youngstown Steel, H. J. Heinz Company, Standard Brands Company, Glidden Company and others of that nature.

All of these companies have either offices or plants in the city of Chicago.

On cross-examination the witness testified that insofar as the operations of the defendant were concerned, there was no possible way in which they could determine the proportion of local transportation as compared to intrastate and interstate, but he did state that in all the operations, every truck had some of all types of freight on it.

In view of the uncontradicted testimony in the record, it would appear that the defendant is not able to separate its intracity business from its interstate business, nor can it keep records of such business, nor can it continue in any one of the operations without giving up its entire business. In other words, it needs all of its business to keep in operation.

In *Pullman Co.* v. *Adams*, 189 U. S. 420, a Mississippi statute was involved, imposing a privilege tax on each sleeping-car company carrying passengers from one point to another within the State. The proof showed that the defendant company carried passengers into Mississippi from points outside the State, or out of Mississippi from points within the State, but that the same cars also carried passengers from point to point within the State. It was contended that the tax was invalid as a burden upon interstate commerce. The United States Supreme Court affirmed the judgment of the State court, holding the tax valid, saying that the defendant had the right to choose between what points it would carry persons and, therefore, the right to give up the carriage of passengers from one point to another within the State. The court further said, "The company cannot complain of being taxed for the privilege of doing a local business which it is free to renounce." The distinguishing factor in that case and in the situation before us is that the record is clear and uncontroverted that the defendant herein is not free to renounce.

The record is uncontradicted that the defendant cannot engage in any one portion of its business without the other.

In *Sprout* v. *South Bend*, 277 U. S. 166, the Supreme Court of the United States, considering an ordinance of the city of South Bend imposing a license on motor busses, stated, "But in order that the fee or tax shall be valid, it must appear that it is imposed solely on account of the intrastate business; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the imposition; and that the person taxed could discontinue the intrastate business without withdrawing also from the interstate business." The evidence in the instant cause makes this language applicable to the case here.

The case is similar in some respects to *People* v. *Horton Motor Lines, Inc.* 281 N. Y. 196, 22 N. E. 2d 338. That case involved an interstate motor carrier which operated a fleet of trucks within the city of New York to deliver and pick up freight to and from its New York terminal or to other shippers within the city. The question involved was whether the public carters ordinance could be applied to the defendants' small trucks which engaged primarily in interstate commerce, although all operated "within the city." In determining that the defendant was not subject to the carters ordinance, the court cited *Northern Pacific Railway Co.* v. *Washington ex rel. Atkinson*, 222 U. S. 370. In that case it was said, "The train, although moving from one point to another in the State of Washington, was hauling merchandise from points outside of the State destined to points within the State and from points within the State to points in British Columbia, as well as in carrying merchandise which had originated outside the State and was in transit through the State to a foreign destination. This transportation was interstate commerce, and the train was an interstate train."

The language of this last cited case is applicable here. While the defendant may have intracity loads in part upon its trucks, it is clear that every load combines intrastate and interstate property as well. The incidental carrying of loads within the city does not make the defendant subject to the license tax here. The defendant cannot separate its loads, nor can it discontinue any part of the service. Under these facts, we must conclude that the defendant is engaged in interstate commerce within the meaning of that term and is not subject to the license tax here in question.

Under the view we have taken in this cause, it is not necessary to consider the other arguments made by the appellant and appellee. For the reasons stated herein, the judgment of the municipal court of the city of Chicago is affirmed.

*Judgment affirmed.*

THOMPSON, C.J., and CRAMPTON, J., dissenting.