CITY OF CHICAGO *v.* WILLETT COMPANY.

No. 23.   Argued October 17, 1952.—Decided February 9, 1953.

*Arthur Magid* argued the cause for petitioner.  With him on the brief were *John J. Mortimer* and *L. Louis Karton.*

*Charles Dana Snewind* argued the cause for respondent.  With him on the brief were *William J. Lunch* and *George J. Schaller.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Once more we are called upon to pass on the validity of a tax which falls in some measure upon commerce "among the several States."   In the situation before us,

it is not a tax imposed on interstate commerce as such. It is a tax intended to fall on business done "within the city" that levies it, although in part it is imposed on carriers of intrastate and interstate commerce inseparably commingled. The tax is on trucks and is levied by an ordinance of the City of Chicago, of which the relevant portions are set out in the margin.[1] It is graduated according to size, ranging from $8.25 on a truck of no more than two-ton capacity to $16.50 on a truck of more than four-ton capacity. Penalties are provided for failure to pay the tax.

Respondent is an Illinois corporation and has its place of business in Chicago. It owns a fleet of trucks which it employs to transport goods within Chicago, between Chicago and other points in Illinois, and between Chicago, and other points in Illinois, and points in Indiana

---

[1] "Every . . . truck . . . which shall be operated . . . for the purpose of transporting . . . goods . . . within the city for hire or reward, shall be deemed a cart . . . .

"Any person engaged in the business of operating a cart shall be deemed a carter.

"An annual license tax is imposed upon every carter for each cart operated or controlled by him, according to the following schedule:

"Automotive vehicles—

| | |
|---|---|
| Capacity not exceeding two tons | $8.25 |
| Capacity exceeding two but not exceeding three tons | 11.00 |
| Capacity exceeding three but not exceeding four tons | 13.20 |
| Capacity exceeding four tons | 16.50 |

"It shall be unlawful for any person to engage in the business of a carter without first having paid such license tax.

"Any person violating any of the provisions of this chapter shall be fined . . . ." Municipal Code of Chicago, c. 163, Journal of the Proceedings of the City Council of the City of Chicago, Illinois, January 14, 1949, p. 3679.

and Wisconsin. It is stipulated that each of respondent's vehicles "during every single day of the year carries on it along with property which never leaves the city . . . property destined to some point outside the State of Illinois."

Upon respondent's failure to pay the tax the present proceedings were instituted by the City of Chicago in its Municipal Court. The verdict having gone against the City, the Supreme Court of Illinois, on appeal, affirmed the judgment of acquittal, holding that respondent was "not subject to the license tax" because it "cannot separate its loads, nor can it discontinue any part of the service." *City of Chicago* v. *Willett Co.,* 406 Ill. 286, 295, 94 N. E. 2d 195, 200.

Being left in doubt by the Illinois court's opinion whether it had held that the ordinance could not, because of the Commerce Clause, be validly applied to the respondent's situation or had construed the ordinance so as not to cover a situation like respondent's, we granted certiorari and remanded for clarification. 341 U. S. 913. A restatement of its holding left us in no doubt that the Supreme Court of Illinois did not rest its affirmance on a restrictive construction of the ordinance, excluding respondent from its scope, but found that as applied to respondent the ordinance runs afoul of the Commerce Clause. *City of Chicago* v. *Willett Co.,* 409 Ill. 480, 101 N. E. 2d 205. We granted certiorari to review this judgment because it raises questions of importance to the Nation's major transportation centers. 343 U. S. 940.

"It being once admitted, as of course it must be, that not every law that affects commerce among the States is a regulation of it in a constitutional sense, nice distinctions are to be expected." *Galveston, Harrisburg & San Antonio R. Co.* v. *Texas,* 210 U. S. 217, 225. This case does not raise the difficulties so often encountered

when determination of the validity of State action affecting interstate commerce requires an accommodation between a State's undoubted power over its own internal commerce and the national interest in the unrestricted flow of interstate commerce. This tax, as it falls on respondent, an Illinois corporation having its place of business in Chicago, is clearly unassailable under the authority of *New York Central R. Co.* v. *Miller,* 202 U. S. 584, which we reaffirmed in *Northwest Airlines, Inc.* v. *Minnesota,* 322 U. S. 292. However, "nice distinctions" have been argued to us and they should be considered.

It is said on the one hand that *Osborne* v. *Florida,* 164 U. S. 650, *Pullman Co.* v. *Adams,* 189 U. S. 420, and *Pacific Telephone Co.* v. *Tax Commission,* 297 U. S. 403, decide this case, and on the other that it is controlled by cases such as *Adams Express Co.* v. *New York,* 232 U. S. 14, *Bowman* v. *Continental Oil Co.,* 256 U. S. 642, *Sprout* v. *South Bend,* 277 U. S. 163, and *Cooney* v. *Mountain States Telephone Co.,* 294 U. S. 384. As was true in *Pacific Telephone Co.* v. *Tax Commission, supra,* the taxpayer's principal argument in this case has been that the tax is necessarily void because the taxpayer is not free to withdraw from the local business, which alone the statute purports to tax, without discontinuing its interstate business as well. Respondent relies heavily on *Sprout* v. *South Bend, supra.* But Mr. Justice Brandeis, who wrote for the Court in *Sprout,* pointed out in the *Pacific Telephone* case that in *Sprout* the taxpayer could not avoid the tax by restricting himself to interstate business only and withdrawing from local business, because the tax, by its terms, fell on exclusively interstate, as well as intrastate, business conducted from the City of South Bend. 297 U. S., at 416–417. That was the controlling fact in *Sprout,* which was absent in the *Pacific Telephone*

case, and is absent in this case also, since the Illinois Supreme Court has told us that the Chicago ordinance is not to be read as imposing a tax on trucks which do not carry goods within the City. *City of Chicago* v. *Willett Co., supra,* 406 Ill., at 289–290, 94 N. E. 2d, at 197–198. Thus, as regards the main point pressed by respondent, the Chicago tax avoids the infirmity laid bare by the *Sprout* case, and meets the facts of *Osborne* v. *Florida, supra,* and *Pullman Co.* v. *Adams, supra,* as did the *Pacific Telephone* case. Again, as in *Pacific Telephone,* the taxpayer here makes no showing that the tax, though directed at intrastate business only, in fact burdens interstate commerce. This is for the taxpayer to show affirmatively and respondent has made no attempt to do so.

But, if it were necessary to decide upon the basis of the "nice distinctions" urged upon us, we could not rest without more on the authority of *Pacific Telephone.* For the tax in that case was measured by a percentage of the gross income drawn solely from intrastate business. Although the taxpayer's intrastate and interstate activities were inseparable, the tax was not laid inseparably on both. 297 U. S., at 414. That is not true in this case. Here the tax falls inseparably on what have been called instrumentalities of interstate commerce, which are at once also those of intrastate commerce. Whatever intrinsic significance this difference may have in other situations, it becomes irrelevant in a case controlled, as is this one, by the governing principles of *New York Central R. Co.* v. *Miller, supra.*[2]

---

[2] The *Miller* case was not considered by the Court in *Adams Express Co.* v. *New York, supra; Bowman* v. *Continental Oil Co., supra; Cooney* v. *Mountain States Telephone Co., supra;* or *Sprout* v. *South Bend, supra.* It was inapplicable to the facts of the first three cases. In *Adams Express,* circumstances surrounding the im-

In the *Miller* case, the taxpayer, a railroad company, was "a New York corporation owning or hiring lines without as well as within the State . . . and sending its cars to points without as well as within the State, and over other lines as well as its own." 202 U. S., at 593. The cars were often not in the company's possession for some time. The State of New York levied a tax computed on the basis of the amount of the capital stock employed within the State. The Court held that the railroad's property could constitutionally be subjected to this tax by New York, as that State was its permanent situs, "notwithstanding its occasional excursions to foreign parts." 202 U. S., at 597; see *Northwest Airlines* v. *Minnesota, supra,* 322 U. S., at 299, n. 4. In the *Northwest Airlines* case, the taxpayer, a Minnesota corporation, used St. Paul as the home port for all its planes. The rebuilding and overhauling of planes was done in St. Paul. Minnesota assessed a tax against the airline on the basis of the entire fleet coming into the State. We held, on the authority of the *Miller* case, that "[t]he benefits given to Northwest by Minnesota and for which Minnesota taxes—its corporate facilities and the governmental resources which Northwest enjoys in the conduct of its business in Minnesota—are concretely symbolized by the fact that Northwest's principal place of business is in St. Paul . . . . The relation between

---

position and enforcement of the tax indicated an attempt to exert control over interstate commerce for reasons and purposes not sanctioned by the Commerce Clause. In the *Bowman* case the taxpayer was a foreign corporation. In *Cooney* this fact is recited by the Court. In *Sprout,* however, the taxpayer was a resident, and it would appear that South Bend was his place of business. The *Sprout* case rests, as is true of all decisions in this field, on the precise facts surrounding the challenged tax—its scope, its relation to the taxing scheme of State or City, its amount, its practical consequences, and other relevant factors.

Northwest and Minnesota—a relation existing between no other State and Northwest—and the benefits which this relation affords are the constitutional foundation for the taxing power which Minnesota has asserted." 322 U. S., at 294. And the two concurring opinions in the *Northwest Airlines* case harmonize with the result we reach here. Indeed, the "home port" theory favored by MR. JUSTICE JACKSON, 322 U. S., at 306, fits a fleet of trucks at least as well as it does a fleet of airliners.

The central and decisive fact in this case is that respondent's business has, as much as any transportation business can have, a home. That home is Chicago. To the extent that respondent's business is not confined within the City's limits, it revolves around the City. It is fed by terminals for rail and sea transportation which the City provides. It receives, much more continuously than did the airline in the *Northwest Airlines* case or the railroad in the *Miller* case, the City's protection, and it benefits from the City's public services. In the circumstances, a tax of reasonable proportions such as the one in question, not shown in fact to be a burden on interstate commerce, is not inconsistent with the Commerce Clause.

The judgment of the Supreme Court of Illinois is reversed and the cause remanded to that Court for proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE REED, with whom THE CHIEF JUSTICE joins, concurring in the judgment.

I agree with the conclusion reached by the Court. In *Pacific Telephone & Telegraph Co.* v. *Tax Commission,* 297 U. S. 403, it was held that "No decision of this Court lends support to the proposition that an occupation

tax upon local business, otherwise valid, must be held void merely because the local and interstate branches are for some reason inseparable." Page 415. Cf. *Sprout* v. *South Bend,* 277 U. S. 163, 171; *Pullman Co.* v. *Adams,* 189 U. S. 420.

The Chicago "carters tax" is strictly an occupational tax for carrying goods within the City. *City of Chicago* v. *Willett Co.,* 406 Ill. 286, 290, 94 N. E. 2d 195, 198. I do not think that *New York Central R. Co.* v. *Miller,* 202 U. S. 584, is a precedent to uphold such a tax as this on the ground that the taxpayer is a corporation of the taxing state and doing business in Chicago. The tax in the *Miller* case was measured by the capital employed in the state. All railroad cars of the taxpayer except those outside the state "during the whole tax year" were included in the measure. Page 595. The validity to so tax turned on the railroad's failure to show, by some form of apportionment, taxability in other states. Page 597. I find nothing in the conclusion and judgment of the Court in *Northwest Airlines* v. *Minnesota,* 322 U. S. 292, that would make the *Miller* case applicable to this situation, even if the "conclusion" were an opinion of this Court. If I understand the Court's present opinion correctly, it decides that this occupation tax is valid merely because the taxpayer is an Illinois corporation with its business home in Chicago, the taxing body. The facts that it is an Illinois corporation and that its trucks are sometimes out of the state are not controlling. The corporation is taxable because it does intrastate business on the streets of Chicago.

Whether the tax is expressly declared to be for the use of the highways or for other state services or protection rendered interstate business is immaterial. This is a charge obviously for the use of the highways of the City by the carters and therefore valid. See *Union Broker-*

*age Co.* v. *Jensen,* 322 U. S. 202, 211–212; *Southern Gas Corp.* v. *Alabama,* 301 U. S. 148, 153; and *Caskey Baking Co.* v. *Virginia,* 313 U. S. 117, 119.

MR. JUSTICE DOUGLAS, dissenting.

If a carrier had two trucks, one engaged exclusively in intrastate commerce and the other engaged exclusively in interstate commerce, I think this tax could not constitutionally be levied on the latter. Like the tax in *Sprout* v. *South Bend,* 277 U. S. 163, 170, it is not designed "as a measure of the cost or value of the use of the highways." As the Supreme Court of Illinois said, it is an occupational tax. 406 Ill. 286, 290, 94 N. E. 2d 195, 198. It therefore could not be exacted for the privilege of engaging in interstate commerce. *Sprout* v. *South Bend, supra,* p. 171; *Spector Motor Service* v. *O'Connor,* 340 U. S. 602.

The incidence of the tax in the present case is no different. It is a flat fee per truck. Respondent does not segregate its intrastate from its interstate business; nor is it possible for it to do so; nor could respondent continue in business if there were a segregation. 406 Ill. 286, 291–293, 94 N. E. 2d 195, 198–199. One truck often makes both intrastate and interstate deliveries. The interstate business, by increasing the number of trucks operated by respondent, therefore increases the amount of the tax. That for me is enough to establish an unconstitutional burden on interstate commerce. This case therefore is not controlled by *Pacific Tel. Co.* v. *Tax Comm'n,* 297 U. S. 403, 414, where the interstate business did not increase the amount of the tax.

The burden on commerce is as great whether the tax on the interstate carrier is imposed by the state of its incorporation or by another state. That is implicit in *Sprout* v. *South Bend, supra,* a case which it seems to me is faithful to the constitutional scheme.