COMMONWEALTH *vs.* LESLIE D. TROTT
(and a companion case [1]).

Barnstable.   March 1, 1954. — June 10, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Fisheries. Conservation. Jurisdiction*, Federal land, Territorial waters, Fisheries. *Commonwealth*, Territorial waters. *United States. Constitutional Law*, Interstate commerce, Conservation, Due process of law, Equal protection of laws. *Ship. Interstate Commerce. Treaty.*

The mere taking of Monomoy Island by the United States by eminent domain under the "Migratory Bird Conservation Act" did not withdraw the island or its territorial waters from the jurisdiction of Massachusetts to the extent of precluding the operation of St. 1936, c. 238, regulating fishing in those waters. [494–495]

The mere enrollment and licensing of a vessel for fishing under the "Shipping" laws of the United States did not render the vessel and its operators immune to a State conservation statute regulating the manner of taking fish in the State's territorial waters. [495]

St. 1936, c. 238, forbidding the use of beam or otter trawls to drag for fish in certain territorial waters of Massachusetts during a specified part of the year is not invalid as an undue burden on interstate commerce. [496]

Neither a certain presidential proclamation merely declaring a policy respecting conservation of coastal fishery resources nor certain provisions of an international convention participated in by the United States which were no more affirmative with regard to coastal fisheries than such declaration of policy constituted an occupation by the United States of the field of regulating fishing in the territorial waters of Massachusetts to the exclusion of State regulation of fishing in those waters in the interest of conservation by a statute such as St. 1936, c. 238. [496–497]

St. 1936, c. 238, does not deny equal protection of laws to trawl fishermen affected by it nor deprive them of property without due process of law in violation of the Fourteenth Amendment to the Federal Constitution. [498]

[1] The companion case is Commonwealth *vs.* Douglas P. Malone.

Two COMPLAINTS, received and sworn to in the Second District Court of Barnstable on May 27, 1949.

Upon appeal to the Superior Court, the cases were heard without jury by *Connelly, J.*, a District Court judge sitting under statutory authority, who found the defendants guilty. They alleged exceptions.

*Henry Wise*, (*Robert L. Wise* with him,) for the defendants.

*John P. Sylvia, Jr.*, Assistant District Attorney, for the Commonwealth.

SPALDING, J.   On May 24, 1949, the defendants Trott and Malone, residents of this Commonwealth and masters respectively of the fishing vessels "Edith" and "Elva and Estelle," were dragging with otter trawls approximately one and one half miles off the shores of Monomoy Island in the open sea when their vessels were boarded by a coastal warden of the department of conservation, division of marine fisheries, of the Commonwealth.   As a result of the information obtained by the warden the defendants were prosecuted in a District Court on a complaint charging them with a violation of St. 1936, c. 238, which provides that it "shall be unlawful, between May first and October thirty-first, both dates inclusive, in any year, for any person to use beam or otter trawls to drag for fish . . . [in a specifically described portion of] the territorial waters of the commonwealth . . . ."   It is agreed that the defendants were within the area described in the statute at the time the coastal warden boarded their vessels.   It is also agreed that the defendants at that time were engaged in dragging for fish of the cod group, and flat fish, all of which are "migratory, free-swimming ocean fish, with no known fixed habitat."

The defendants were found guilty in the District Court and appealed to the Superior Court where the cases were tried to a judge sitting without a jury.   The cases were submitted on a statement of agreed facts which the judge adopted as his findings, and each defendant was found guilty and sentenced to pay a fine of $25.   The cases come here on the defendants' exceptions to various rulings made during

the course of the trial. The only one that need concern us is the exception to the finding of guilty on the agreed facts, as under that exception all of the points argued by the defendants are open. See *Howland* v. *Stowe*, 290 Mass. 142, 146–147; *Quincy* v. *Brooks-Skinner, Inc.* 325 Mass. 406, 410–411.

From the agreed facts it appears that under the authority of the "Migratory Bird Conservation Act" (U. S. C. [1940 ed.] Title 16, §§ 715 et seq.) the Federal government in 1944 instituted proceedings in the District Court of the United States for the District of Massachusetts to take Monomoy Island by eminent domain. Both the town of Chatham, of which the island was a part, and the Commonwealth, among others, were parties to the proceedings. On June 15, 1944, a decree was entered in that case ordering that all parties in interest including the town of Chatham and the Commonwealth surrender possession of Monomoy Island to the United States. [1] Monomoy Island is in fact an island and is not within any inland waters of the Commonwealth. The area was taken for a bird refuge, but by an arrangement between the department of the army and the department of the interior, it was also used for military purposes from November, 1944, to February, 1951.

While U. S. C. (1946 ed.) Title 16, § 715g, provides that the jurisdiction both civil and criminal of the State as to property acquired under the migratory bird act is not to be affected, except for the punishment of Federal offences, U. S. C. (1946 ed.) Title 16, § 715d, provides that the sections of the act including § 715g do not apply to lands "acquired, held, or used by the United States for military purposes."

The main contention of the defendants is that, for the various reasons presently to be discussed, they committed no offence against the laws of this Commonwealth because it had no authority to proscribe fishing by beam or otter

---

[1] The tract of land known as "Old Monomoy Light House Site," a part of the island, was not included in the decree because that had previously been ceded to the United States.

trawling in the area embraced by St. 1936, c. 238. That
area, it is argued, is subject to Federal rather than State
regulation.

One of the arguments advanced by the defendants as
militating against the right of the Commonwealth to regu-
late fishing in the waters adjacent to Monomoy Island is that
the island is "Federal territory" and has been "annexed"
to the United States. No contention is made that the
United States acquired exclusive jurisdiction over Monomoy
Island by virtue of art. 1, § 8, cl. 17, of the Federal Consti-
tution.[1] At all events it would appear that exclusive juris-
diction under this clause was not obtained. The consent of
the Legislature was not granted by the general statute,
G. L. (Ter. Ed.) c. 1, § 7, and we are not aware of any
other act of the Legislature giving consent. "The acquisi-
tion of title by the United States is not sufficient to effect
. . . [the exclusion of State jurisdiction]. It must appear
that the State, by consent or cession, has transferred to
the United States that residuum of jurisdiction which other-
wise it would be free to exercise." *Silas Mason Co.* v. *Tax
Commission of Washington,* 302 U. S. 186, 197. *Surplus
Trading Co.* v. *Cook,* 281 U. S. 647, 650–652. *James* v.
*Dravo Contracting Co.* 302 U. S. 134, 141–142. In other
words ownership and use of land by the United States,
without more, do not withdraw the lands from the jurisdic-
tion of the State. The lands "remain part of her territory
and within the operation of her laws, save that the . . .
[State] cannot affect the title of the United States or em-
barrass it in using the lands or interfere with its right of
disposal." *Surplus Trading Co.* v. *Cook,* 281 U. S. 647, 650.

Monomoy Island, then, although owned by the United
States was still part of Massachusetts and was subject to
its laws except to the extent that such laws might interfere

---

[1] Under this clause Congress is given the power "to exercise exclusive legis-
lation in all cases whatsoever, over such district . . . as may . . . become
the seat of the government of the United States, and to exercise like authority
over all places purchased by the consent of the legislature of the state in which
the same shall be, for the erection of forts, magazines, arsenals, dock yards,
and other needful buildings . . . ."

with the performance of any functions of the Federal government. There is nothing in the statement of agreed facts that would indicate that the statute under consideration interferes with any enterprise conducted on the island by the United States. Whatever waters touched the coast of the island were in effect touching the coast of Massachusetts, and whatever jurisdiction Massachusetts had over those waters did not cease with the acquisition of the island by the United States.[1] Thus if the statute in question is invalid it is because the Commonwealth has attempted to operate in a field from which it has been excluded by a paramount assertion of power by the Federal government. In the absence of such an assertion of power there can be no doubt that the Commonwealth has the right to protect and regulate fisheries within its territorial waters by legislation of the sort here involved. *Skiriotes* v. *Florida,* 313 U. S. 69, 75. *Toomer* v. *Witsell,* 334 U. S. 385, 393. *Dunham* v. *Lamphere,* 3 Gray, 268, 271–273. We now proceed to determine whether the United States has asserted its power in such a way as to render our statute invalid.

The defendants argue that the statute cannot stand because it interferes with the authority exercised by the Federal government under its power to regulate commerce. Each of the vessels here involved was duly enrolled and licensed for fishing in pursuance of the laws of the United States dealing with "Shipping." U. S. C. (1946 ed.) Title 46, §§ 251, 263, and 319. We cannot agree that the effect of these licenses was to clothe the vessels and those operating them with immunity from State regulation of the sort here involved. *Smith* v. *Maryland,* 18 How. 71, 74. *Dunham* v. *Lamphere,* 3 Gray, 268, 274. See *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202, 208. The statute in question is obviously a conservation measure and is not concerned with commerce and navigation. Title 46 does not purport

[1] We are not to be understood as intimating that if the island was within the exclusive jurisdiction of the United States the Commonwealth would have no jurisdiction over the adjacent territorial waters. That question is not before us.

to regulate the taking of fish, but deals only with the subject of shipping.

It is agreed that most of the fish which are caught in Massachusetts waters "enter into the stream of interstate commerce." If it be assumed, as the defendants argue, that the challenged statute affects interstate commerce by diminishing the total quantity, of fish which could enter it, we are of opinion, nevertheless, that the statute is a legitimate exercise of the Commonwealth's police power to protect from depletion an important economic resource. *Cities Service Gas Co.* v. *Peerless Oil & Gas Co.* 340 U. S. 179, 186–188. See *Geer* v. *Connecticut,* 161 U. S. 519. Not every law that affects commerce is a regulation of it in a constitutional sense. *Galveston, Harrisburg & San Antonio Railway* v. *Texas,* 210 U. S. 217, 225. *Chicago* v. *Willett Co.* 344 U. S. 574, 576. The statute here is vastly different from that held to unduly burden interstate commerce in *Toomer* v. *Witsell,* 334 U. S. 385, 403–406.

The defendants further contend that the field of regulation over the territorial waters of the island has been otherwise occupied by the Federal government. Reliance is placed on the Presidential Proclamation, 3 CFR, 1945 Sup., Proc. 2668, which declares national concern over the threatened depletion of coastal fishery resources, and proclaims a policy to be followed on the national and international level to remedy the situation. One of the suggested remedies is that where fisheries are used only by our nationals the United States should establish conservation zones which would be regulated and controlled by it. Supplementary to this proclamation, the President issued an executive order, 3 CFR, 1945 Sup., E. O. 9634, in which he instructed the appropriate officials to recommend conservation zones and regulations therefor which would be incorporated into future executive orders.[1]

Apparently no action to date has been taken under the executive order just referred to. At least none has been

---

[1] Both the proclamation and the executive order were issued on September 28, 1945.

called to our attention and we have been unable to discover any. Whatever the situation might be if action under it had been taken, it is plain that it did not preclude the States, in the absence of such action, from regulating fishing along their territorial waters. *Skiriotes* v. *Florida,* 313 U. S. 69, 75. *Toomer* v. *Witsell,* 334 U. S. 385, 393.

One of the conservation measures recommended in the above mentioned proclamation was the regulation of fisheries through international agreements. In pursuance of that policy the United States on February 8, 1949, signed the International Convention for the Northwest Atlantic Fisheries, 1 U. S. Treaties & Other International Agreements, 477. The defendants argue that by the terms of this convention the territorial waters of this Commonwealth here involved were subject to international control at the time of the defendants' dragging operations. There is no merit in this argument. The convention specifically provides by art. XV, paragraph 2, that it was to become operative "upon the deposit of instruments of ratification by four signatory Governments." This event did not occur until July 3, 1950, more than a year after the dragging operations on which these prosecutions are based. Obviously this convention is of no materiality in the case at hand.

Nor is there any merit in the argument that apart from the convention's operation, certain provisions served notice on the several States that the Federal government was asserting jurisdiction over territorial waters as against the several States' jurisdiction. Territorial waters are excepted from the convention area set out in art. I, paragraph 1, and there follows in paragraph 2 a protection of the claims of "any Contracting Government in regard to the limits of territorial waters or to the jurisdiction of a coastal state over fisheries." Even if these paragraphs can be read as affecting Federal-State relations (a doubtful proposition at best, see *Skiriotes* v. *Florida,* 313 U. S. 69), we find nothing in them more affirmative than the declaration of policy set out in the Presidential Proclamation and dealt with above.

Finally, the defendants contend that the statute violates the due process and equal protection clauses of the Fourteenth Amendment. They argue that the statute is arbitrary since what it prohibits is based on the kind of gear used rather than the size and thus the classification is unrelated to the purpose of conservation. Large nets and seines, it is said, are not within the statute. Perhaps a large net of the sort which the statute does not prohibit may be capable of taking in more fish than a small trawl, but the classification could well be based on the greater likelihood of a larger catch by the use of mobile trawls instead of stationary nets. "A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it." *Metropolitan Casualty Ins. Co.* v. *Brownell,* 294 U. S. 580, 584. *Railway Express Agency, Inc.* v. *New York,* 336 U. S. 106. *McQuade* v. *New York Central Railroad,* 320 Mass. 35, 38–39. We cannot say that the classification here is unreasonable. At most the defendants' arguments do no more than demonstrate that the question is debatable. But that is not enough to justify us in setting the statute aside. *Bayside Fish Flour Co.* v. *Gentry,* 297 U. S. 422, 430. Nor does the statute violate the due process clause in that it deprives the defendants, as otter trawl fishermen, of the maximum use of their skills and equipment. *Cities Service Gas Co.* v. *Peerless Oil & Gas Co.* 340 U. S. 179, 185–186. *Breard* v. *Alexandria,* 341 U. S. 622, 632–633. *Dunham* v. *Lamphere,* 3 Gray, 268, 273–274.

*Exceptions overruled.*