## ST. LOUIS & EAST ST. LOUIS ELECTRIC RAILWAY COMPANY *v.* STATE OF MISSOURI AT THE RELATION AND TO THE USE OF HAGERMAN, COLLECTOR OF THE CITY OF ST. LOUIS, IN THE STATE OF MISSOURI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 261.  Argued March 23, 1921.—Decided May 2, 1921.

A street railroad company whose tracks crossed and were confined to a bridge between Missouri and Illinois, was taxed, under Missouri Laws of 1901, p. 232, by valuing its rolling-stock, poles, wires, cash, road-bed and superstructure as such, adding a reasonable valuation of "all other property," and assigning due proportions to Missouri as the basis of the tax. *Held*, that the tax could not be regarded as a direct burden upon the company's franchise to conduct its interstate traffic over the bridge, upon the ground that the "other property" valued consisted solely of that franchise, since it appeared that much of the value of the railway as a going con-

cern was due to exclusive rights on the bridge and lucrative traffic arrangements resulting from private contracts with other companies, which must have been considered by the taxing authorities in making the valuation. P. 316.

279 Missouri, 616, affirmed.

THIS was an action by the State of Missouri to collect a tax levied on the property of the plaintiff in error railway company. The state courts, including the court below, sustained the tax. The facts are stated in the opinion.

*Mr. Joseph S. Clark*, with whom *Mr. William E. Garvin* was on the brief, for plaintiff in error.

*Mr. Thomas G. Rutledge*, with whom *Mr. J. M. Lashly* was on the brief, for defendant in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

The plaintiff in error, hereinafter referred to as the Bridge Electric Company, a corporation organized under Missouri law, was the owner in 1906 of 865–1000ths of a mile of electric railway, constructed upon and extending from the easterly to the westerly end of the Eads Bridge over the Mississippi River at St. Louis. In that year the State Board of Equalization of Missouri valued the portion of this railroad which was within that State at $186,019, and levied a tax upon it for state and local purposes, which the plaintiff in error refused to pay, and thereupon this suit was instituted to recover the amount of the tax.

The case was tried on an agreed statement of facts and the State prevailed in all the state courts. Only one of the several defenses relied upon in the answer has been argued in this court, viz., that the tax is invalid because, if allowed, it would constitute a direct and unconstitutional burden on interstate commerce.

The state statute provided that in valuing railroads for taxation the State Board of Equalization should determine the total value of the entire property in the State, tangible

and intangible, of each company, and that from this total it should deduct the value of all its tangible property and then "enter the remainder upon the assessment list . . . under the head of 'all other property.'" Laws of Missouri, 1901, p. 232, § 2.

Complying with this statute the Board of Equalization valued all of the rolling stock, poles, wires and cash of the Bridge Electric Company at $32,630 per mile; the roadbed and superstructure at $5,000 per mile, and "all other property" at $500,000 per mile, making a total value per mile of $537,630.

There were .346 of a mile of the track in the State of Missouri and this proportion of the total value per mile, amounting to $186,019 (of which $173,000 was included under the item "all other property"), was the amount on which the disputed tax was levied.

The unit rule thus adopted by the Board of Equalization has long been a familiar method, often approved by this court, for valuing interstate railroad properties. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Backus,* 154 U. S. 439, 445; *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350; *Branson* v. *Bush,* 251 U. S. 182.

It is not contended that this valuation is unreasonable in amount, but only that the property of the company, which was valued as "all other property," consisted solely of its franchise to conduct interstate passenger traffic over the interstate bridge and that therefore the tax, so far as levied on the valuation placed on that property, is a direct tax and burden on the right to engage in interstate commerce and that it is, for this reason, unconstitutional.

But the stipulation on which the case was tried does not sustain this contention.

This stipulation shows that in 1902 the Bridge Electric Company acquired by contract with the Terminal Railroad Association of St. Louis the exclusive right to operate an electric railroad over the Eads Bridge for the term of

fifty years, (for passenger traffic only and for a part of the fare to be charged) and that in the same agreement it entered into a written contract with two other electric railroad companies for the recited purpose of causing all passenger traffic originating on the lines then or thereafter controlled by them to pass over the Bridge Electric Company's road. Of the two latter companies thus contracted with, one operated extensive lines of electric street railroad in the City of East St. Louis, in Illinois, and the other operated an extensive system of suburban electric railways in Illinois. Both of these Illinois systems connected with the Bridge Company's track at the easterly end of the bridge.

Later in the same year, 1902, the Bridge Electric Company entered into another agreement by which the company operating lines in East St. Louis contracted, for a percentage of the fares to be collected for transportation over the bridge, to furnish the cars, crews and equipment for carrying, and to operate the cars necessary to carry, all passengers across the bridge, without change of cars. Coupon tickets were to be issued to passengers traveling either way across the bridge and other conveniences were provided for the purpose of increasing the bridge traffic.

It is apparent that the large value which it is conceded this street railroad had was derived, not from its mere franchise to do an interstate business, but from the exclusive right which we have seen the company acquired by private contract to operate over the Eads Bridge, a public highway, and from the other rights also derived from private contract which made its line of track a part of two Illinois systems of railway and gave it a profitable operating arrangement with them. It was these contracts which gave the company's small extent of physical property an earning capacity, and therefore a value, which enabled it to pay from their date in 1902 to the date of the disputed assessment five per cent. annual

interest on $500,000 of bonded indebtedness and an annual dividend of about three per cent. on an equal amount of capital stock.

The law applicable to the state of facts thus developed was summarized in *Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160, in a form which has been frequently approved by this court, notably in *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 365. Slightly condensed it is that, while a State may not, in the guise of taxation, constitutionally compel a corporation to pay for the privilege of engaging in interstate commerce, yet this immunity does not prevent the State from imposing an ordinary property tax upon property having a situs within its territory and employed in interstate commerce. Even the franchise of a corporation, if not derived from the United States, although that franchise is the business of interstate commerce, is subject to state taxation as a part of its property.

The record does not show what the specific items were which entered into the consideration of the Board of Equalization in valuing "all other property" of the Bridge Electric Company, but it appears from the stipulation that the president of the company was heard with respect to the valuation and assessment of all of its property, and we cannot doubt that the contracts we have described, which very plainly gave to this short line of railway much of the value as a going concern which led the company to bond and capitalize it at $1,000,000, and the Board to value it at approximately one-half that amount, must have been taken into consideration by the Board, and that, therefore, the contention that the tax was levied exclusively upon the franchise to do an interstate business is not sound and must be rejected.

It results that the judgment of the Supreme Court of Missouri must be

*Affirmed.*