WDOD Broadcasting Corporation *v.* Stokes.

(*Nashville*, December Term, 1940.)

Opinion filed May 17, 1941.

Designated for Publication February 4, 1944.

REID MOORE, WILLIAMS & WILLIAMS, RICHARD W. HAGAN, JR., and S. J. McALLESTER, all of Chattanooga, for complainant.

ROY H. BEELER, Atty. Gen., and WILLIAM F. BARRY, Sol. Gen., of Nashville, and HARRY PHILLIPS, Asst. Atty. Gen., for the State.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought to recover $968.86, corporation excise tax, paid by the complainant under protest. The chancellor dismissed the bill and the complainant appealed.

The tax sought to be recovered is levied by section 1316 et seq. of the Code, as amended by chapter 99 and chapter 176 of the Public Acts of 1937. These statutes provide that all corporations and joint stock associations organized under the laws of the State of Tennessee, other than those organized for general welfare and not for profit, shall, without exception, pay to the State comptroller annually an excise tax, in addition to all other taxes, equal to 3.75 per cent. "of the net earnings for their next preceding fiscal or calendar year, from business done within the State."

The complainant is a corporation organized for profit under the laws of the State of Tennessee "to conduct a business of radio broadcasting and to do all things incidental thereto." The only office or place of business of complainant, and all its broadcasting facilities, are

located in Chattanooga, Tennessee, about three miles from the Georgia line and about 25 miles from the Alabama line. The electrical energy used in complainant's broadcasts is generated in Tennessee, its books and records are kept in Chattanooga, stockholders' and directors' meetings are had there, as well as all other corporate activities. Complainant has never paid any similar tax in any State other than Tennessee. For a number of years prior to the filing of this suit it paid the excise tax to the State of Tennessee voluntarily and not under protest.

The complainant is licensed by the Federal Communications Commission. Its maximum rated carrier output is five thousand watts from sunup to sundown, the rest of the time being one thousand watts, with unlimited time of operation. It is required to use its facilities on the air for twelve hours in every twenty-four. Its broadcasts are heard in Georgia, Alabama, and other States.

According to the stipulation of facts filed herein, the complainant derives revenue from national, state and local advertising. Its advertising contracts are secured by a staff working out of offices in Chattanooga and by a representative in New York. Complainant's station is a part of the Columbia Broadcasting System and a portion of its revenue is derived from transmitting general programs which originate in other states. The remaining portion of its revenue is derived from transmitting programs which originate in Chattanooga.

It is further stipulated that a large proportion of complainant's broadcasts, from which it derives a large percentage of its revenue, is of equal interest to listeners in Tennessee and other states. For example, general

broadcasts sponsored by manufacturers whose products are sold in all the states.

A large proportion of complainant's broadcasts, from which it derives a large percentage of its revenue, is primarily of interest to listeners in Tennessee alone, although such programs can be and often are heard by listeners in other states. For example, complainant's facilities are frequently employed for broadcasting speeches by candidates for public office in the city, county, and state, and its facilities are largely used by the retail stores in Chattanooga for advertisement of their goods, and from these sources complainants derives a large part of its revenue.

Chapter 99 of the Public Acts of 1937 provides formulas for the calculation of the net earnings within the state of the corporations affected. As to corporations like the complainant, the formula is:

"(3) If the principal business is other than the manufacture or sale of tangible property, such proportion as its gross receipts in Tennessee during the income year is to its gross receipts for such year within and without the State."

The second paragraph of (3) provides that if "because of peculiar or unusual circumstances inherent in a particular case, the application of the above formulas would work a hardship or injustice, the Commissioner, upon application of the taxpayer and upon such showing is authorized, with the approval of the Attorney General, to adopt such other method of apportionment as would be fair and just under the facts of the case."

No application was made to the Commissioner of Finance and Taxation to adopt a different method for fixing the amount of the tax due and it is conceded, if complain-

ant is liable to the tax, that "its net earnings were properly apportioned to Tennessee on the basis of the proportion of its gross receipts in Tennessee to its gross receipts everywhere." It is further conceded that 91.67 per cent. of complainant's gross receipts were gross receipts in Tennessee. 8.33 per cent. of its gross receipts were collected in New York.

The Department of Finance and Taxation in computing complainant's tax multiplied complainant's entire net earnings, $33,014.46, less federal income tax, by .9167, thus allocating to Tennessee net earnings in the amount of $25,836.24. The 3¾ per cent. tax rate was applied to the net earnings thus apportioned.

■ The complainant does not challenge the method used in computing the tax due. It takes the broad position that by reason of the nature of its business it is protected by the commerce clause of the Federal Constitution, article 1, section 8, clause 3, from the imposition of this tax. We think the chancellor properly decided to the contrary. The nature of the business of radio broadcasting has been fully considered by the Supreme Court of the United States in *Fisher's Blend Station* v. *Tax Commission*, 297 U. S., 650, 56 S. Ct., 608, 80 L. Ed., 957. No elaboration of what was there said is required here. In that case a state occupation tax measured by the gross receipts from radio broadcasting stations within the state licensed to broadcast, and broadcasting, over an area embracing other states, was an unconstitutional burden upon interstate commerce. It will be observed at once that the tax here under consideration differs from the Michigan tax in that the latter was levied on gross receipts and the tax here is levied on net earnings from business done within the state.

It is to be noted first that the tax assailed is not a privilege tax in the sense that its payment is a condition precedent to the corporation's doing any business in Tennessee—interstate or intrastate. The tax is measured with respect to "business done within the State." It is collectible by the usual processes of law, each year, upon net earnings within the State for the "next preceding fiscal or calendar year." Of a similar tax considered in *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S., 113, 41 S. Ct., 45, 46, 65 L. Ed., 169, the Court said: "Payment of the tax is not made a condition precedent to the right of the corporation to carry on business, including interstate business. Its enforcement is left to the ordinary means of collecting taxes. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S., 350, 364, 35 S. Ct., 99, 59 L. Ed. 265; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160, 163, 23 S. Ct. 817, 47 L. Ed., 995. The statute is, therefore, not open to the objection that it compels the company to pay for the privilege of engaging in interstate commerce. A tax is not obnoxious to the commerce clause merely because imposed upon property used in interstate commerce, even if it takes the form of a tax for the privilege of exercising its franchise within the State. *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S., 688, 695, 15 S. Ct., 360, 39 L. Ed., 311. This tax is based upon the net profits earned within the state. That a tax measured by net profits is valid, although these profits may have been derived in part, or indeed mainly, from interstate commerce is settled. *United States Glue Co.* v. *Oak Creek,* 247 U. S., 321, 38 S. Ct., 499, 62 L. Ed., 1135, Ann. Cas. 1918E, 748; *Shaffer* v. *Carter,* 252 U. S., 37, 57, 40 S. Ct., 221, 64 L. Ed., 445. Compare *Peck & Co.* v. *Lowe,* 247 U. S., 165, 38 S. Ct., 432, 62 L. Ed., 1049.

Whether it be deemed a property tax or a franchise tax, it is not obnoxious to the commerce clause.''

The Supreme Court disapproved the theory that an occupation tax upon local business otherwise valid must be held void merely because the local and interstate branches are for some reason inseparable. The Court has said in *Pacific Telephone, etc., Co.* v. *Tax Commission,* 297 U. S., 403, 414, 56 S. Ct., 522, 525, 80 L. Ed., 760, 767, 105 A. L. R., 1: ''Although the two branches of the business of the companies are inseparable, the tax is not laid inseparably upon both. Thus it is not open to the objection held fatal in *Leloup* v. *Mobile,* 127 U. S., 640, 8 S. Ct., 1380, 32 L. Ed., 311, [2 Interst. Com. R., 134], and *Cooney* v. *Mountain States Teleph. & Teleg. Co.,* 294 U. S., 384, 55 S. Ct., 477, 79 L. Ed., 934. 'Certainly, one cannot avoid a tax upon a taxable business by also engaging in a nontaxable business.' *J. E. Raley & Bros.* v. *Richardson,* 264 U. S., 157, 159, 44 S. Ct., 256, 68 L. Ed., 615 [616].''

In the same case, supporting its conclusion by a review of previous decisions, the Court said: ''No decision of this Court lends support to the proposition that an occupation tax upon local business, otherwise valid, must be held void merely because the local and interstate branches are for some reason inseparable. In cases relied upon by appellants, there are expressions which may seem to support that contention. But in none of those cases was the challenged tax measured by the gross income of the intrastate business only. In some it was laid inseparably upon the privilege of doing both interstate and intrastate business. In some the case was suggested of a compulsory local service which, coupled with a tax, might burden interstate commerce. In *Western U. Teleg.*

*Co.* v. *Kansas*, 216 U. S., 1, 30 S. Ct., 190, 54 L. Ed., 355, and *Pullman Co.* v. *Kansas*, 216 U. S., 56, 30 S. Ct., 232, 54 L. Ed., 378, the question presented, and on which the Court divided, was whether payment of a confessedly unconstitutional tax could be made a condition of permitting a foreign corporation to exercise the privilege of continuing to do intrastate business within the state. It is true that in *Sprout* v. *South Bend*, 277 U. S., 163, 171, 48 S. Ct., 502, 505, 72 L. Ed., 833 [837], 62 A. L. R., 45, the Court, when reciting the essentials of a valid license fee for doing local business, said that it must appear 'that the person taxed could discontinue the intrastate business without withdrawing also from the interstate.' But that statement was made in discussing the validity of a flat bus license fee, prescribed by an ordinance which made no distinction between busses engaged exclusively in interstate commerce, those engaged exclusively in intrastate commerce, and those engaged in both classes of commerce; and it must be read in that context. The license fee was held void, because Sprout, who was engaged in both classes of commerce, could not escape payment of the tax by confining himself to interstate business. The cases cited by the Court in that connection were of the same character.''

It seems to us a mistake to say that radio communications are all interstate. The vehicle which transports them, the electro magnetic waves, all probably do cross state lines, but much of the load, the sound, carried by these waves is delivered within the boundaries of the state where the broadcasting station is located. A through train, crossing state lines, often carries local freight and passengers, received within the boundaries of a state and discharged within the boundaries of the same state.

A tax levied with respect to such intrastate business would not be questioned, if not an undue burden on the interstate business. In the case of radio transmission, it seems easy to see intrastate business is included. The difficulty lies in ascertaining the amount of the intrastate business.

In the case before us, as heretofore seen, the rated carrier output of complainant, while five thousand watts during the daylight hours, is only one thousand watts from sundown to sunup. The latter period is the choice of those using the radio for advertising purposes. A station of such limited capacity would be little heard out of the state after darkness. It would be of little value to advertisers except to reach listeners within the boundaries of the state. That is to say, the chief use of complainant's broadcasting facilities would be to transmit communications from its broadcasting station in Chattanooga, Hamilton County, Tennessee, to listeners in the same city, county and state. This would certainly be true at night, probably in the day. We know as a geographical fact that there is no other considerable center of population in the immediate vicinity of Chattanooga, no considerable population that could be satisfactorily reached from this station during desirable hours.

There is no criticism by complainant of the method chosen by the taxing authorities of determining its earnings from business within the state. No effort has been made to show that an unfair method of allocation has been adopted. There is nothing in the record to indicate that the tax is burdensome to the interstate business done by the complainant.

While the intrastate business is not susceptible to exact measurement, the same is true in a number of cases in-

volving impositions like this, which the Supreme Court has sustained. From the stipulated facts with reference to the business of complainant, it is apparent that nearly all its revenue comes from advertisers in Chattanooga,— merchants, manufacturers, candidates, and the like. Such advertisements are primarily designed to reach customers and voters within the city, or at least within the county and state. From the character of the broadcasting station and its location, we may take it for granted that listeners beyond the state are not numerous. The burden would be on the complainant to show that the tax was based on an unfair method of estimating its business done within the state. *Underwood Typewriter Co.* v. *Chamberlain, supra; Pacific Telephone, etc., Co.* v. *Tax Commission, supra.*

Such being the plight of the case, we think the decree of the chancellor should be affirmed, on authority of several decisions of the Supreme Court in which it has been held that a tax similar to this based on the income or net income from so much of the business as was done within the particular state is valid. *United States Glue Co.* v. *Oak Creek,* 247 U. S., 321, 38 S. Ct., 499, 62 L. Ed., 1135, Ann. Cas. 1918E, 748; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S., 113, 41 S. Ct. ,45, 65 L. Ed., 165; *Matson Navigation Co.* v. *State Board of Equalization,* 297 U. S., 441, 56 S. Ct., 553, 80 L. Ed., 791; *Western Live Stock* v. *Bureau of Revenue,* 303 U. S., 250, 58 S. Ct., 546, 82 L. Ed., 823, 115 A. L. R., 944. These cases were more recently approved in *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S., 33, 60 S. Ct., 388, 84 L. Ed., 565, 128 A. L. R., 876.

The Attorney General argues that the controverted tax may be sustained on authority of those decisions of the

Supreme Court which have approved a like tax where a corporation pursues all its activities in a given state, such as the holding of stockholders' and directors' meetings, the declaration of dividends, the maintenance of its main business office, the keeping of its bank accounts, etc., even though the corporation be engaged in interstate commerce. *Atlantic Lumber Co.* v. *Commission of Corporations,* 298 U. S., 553, 56 S. Ct., 887, 80 L. Ed., 1328; *Cheney Bros. Co.* v. *Massachusetts,* 246 U. S., 147, 38 S. Ct., 295, 62 L. Ed., 632. It is not necessary for us to consider this feature of the case, if the tax can be upheld upon the grounds we have stated.

The complainant cites numerous authorities in support of its position, but it seems to us that all these cases have been considered and differentiated in the opinions of the Supreme Court to which we have herein referred. Discussion of these authorities by us, therefore, is not required.

■ The provision of section 1327 of the Code which makes ''the willful failure or refusal of any corporation or joint-stock association to pay the tax or make reports,'' etc., a misdemeanor does not interfere with any business not taxable under the statute. Paying the tax and making report is not a condition precedent to the prosecution of nontaxable business. As to any business, it is only a willful failure to observe the statute which is condemned, and this penal section will not be enforced against any delinquent where there is a *bona fide* question as to liability for the tax.

The decree of the chancellor is affirmed.