**J. Elroy McCAW and John D. Keating, Appellants,**

v.

**Earl W. FASE, The Tax Commissioner of the Territory of Hawaii, Appellee.**

**No. 13920.**

United States Court of Appeals, Ninth Circuit.

Oct. 30, 1954.

Writ of Certiorari Denied Jan. 31, 1955. See 75 S.Ct. 340.

See, also, 216 F.2d 698.

Kenneth Davis, Seattle, Wash., David N. Ingman, Honolulu, Hawaii, Justin Miller, Gen. Counsel, Pacific Palisades, for appellants.

Vincent T. Wasilewski, Atty., Washington, D. C., Edward N. Sylva, Atty. Gen., Rhoda V. Lewis, Deputy Atty. Gen., for appellee.

Before DENMAN and ORR, Circuit Judges, and YANKWICH, District Judge.

**YANKWICH, District Judge.**

Appellant J. Elroy McCaw is a citizen and resident of Centralia, Washington, and appellant John D. Keating a citizen and resident of Portland, Oregon. In 1946, they obtained a license for a limited term from the Federal Communications Commission to operate a radio station known as KPOA in Honolulu, Territory of Hawaii, under the terms of the Communications Act of 1934, as amended, 47 U.S.C.A. §§ 151–609. The station, a 5000 kilowatt station, commenced broadcasting on October 15, 1946.

On May 3, 1951, the appellants filed in Law in the Circuit Court, First Judicial Circuit, Territory of Hawaii, an amended complaint in a suit brought under Section 1575 of the Revised Laws of Hawaii, 1945, to recover the sum of $7,637.33 paid under protest on March 21, 1951. It is conceded that the suit was begun within the period of thirty days after the protested payment, as required by Section 1575.

The amended complaint alleged that the taxes paid under protest were assessed under Chapter 101 of the Revised Law of Hawaii, 1945, upon the gross receipts from radio broadcasting by station KPOA, Honolulu, owned and operated by the appellants, which it challenged as unconstitutional and invalid.

The appellants are a co-partnership registered as such under the laws of the Territory of Hawaii and doing business under the name of "Island Broadcasting Company."

On June 11, 1946, the partnership obtained a license under Section 5451 of Chapter 101 of the Revised Laws of Hawaii, 1945, known as the "general excise tax" or "gross income" tax law, and for the period beginning October 1, 1946, and ending November 30, 1947, the partnership returned for taxation its broadcasting income, and paid the tax on it. For December, 1947, and thereafter, while continuing to report income from broadcasting, the partnership claimed exemption of all such income upon the ground that it was derived from interstate commerce.

It is the appellants' contention in this litigation that *all* broadcasting is

interstate commerce, that the Congress has preempted the subject matter of radio broadcasting to the exclusion of state and territorial legislation of every kind, including taxation, and that the assessments made by the Tax Commissioner were unconstitutional and invalid. The Tax Commissioner, in his answer, asserted, in substance, that the gross receipts assessed for taxation were derived from the transmission of KPOA broadcasts to the radio audience in the Territory of Hawaii, that KPOA does not reach an audience outside the Territory of Hawaii with effective and satisfactory service that is of commercial value in the sale of radio time, that sponsors purchasing radio time on KPOA do not do so with a view of reaching an audience outside the Territory of Hawaii, that where sponsors have occasion to reach an audience outside the Territory, a short-wave relay is employed, and that the Tax Commissioner excluded from the tax assessments all the receipts from the programs transmitted by short-wave relay. In a counterclaim, the additional sum of $14,595.98, in accrued taxes with interest was sought.

The cause was tried without a jury. Findings were entered on January 28, 1952, the court making twelve specific findings, of which the following are the most important:

"1.  Insofar as places outside the Territory of Hawaii are concerned, KPOA's broadcasts on its standard band do not afford effective or satisfactory service that measures up to the standards for commercial coverage.

"2.  Time buyers do not buy time on KPOA as a medium of communication to an out-of-the-territory audience.

"3. Where a KPOA broadcast is directed to an out-of-the-territory audience a short wave relay is used, as in the case of the program 'Hawaii Calls'.

"4.  The tax has not been assessed on any receipts from broadcasts carried out of the Territory by short wave relay or brought into the Territory by short wave relay.

"8.  A large number of KPOA time buyers have no desire or occasion to reach any audience outside the Territory, even if effective and satisfactory service were offered.

"9. The radio audience outside the Territory of Hawaii is not a factor in the selling or buying of radio time on station KPOA, where no short wave relay is employed.

"11.  The territorial tax law has been and is properly interpreted and applied by the Tax Commissioner and the tax law and assessments made thereunder are valid."

On the basis of these findings, the Court concluded that the plaintiff was not entitled to recover the taxes paid and gave judgment to the Tax Commissioner on his counter-claim.

Torkel Westley, who was the Tax Commissioner before the case arose, has been replaced in office by Earl W. Fase. On writ of error to the Supreme Court of the Territory of Hawaii, the judgment was affirmed in McCaw v. Fase, 40 Haw. 121, the Court holding that the findings are sustained by the evidence and that the tax did not have any of the constitutional infirmities urged by the appellants. The Supreme Court held that the trial court had found

"from the evidence—as we do likewise—that assessment of the Territory's gross income tax involved was restricted to receipts of KPOA from the latter's local business, to wit, that which had commercial value only within and not without the Territory of Hawaii." McCaw v. Fase, supra, 40 Haw. at page 172.

The Supreme Court also concurred in the finding of the trial court that the radio broadcasting, by KPOA on its standard wave, was

"for other than control and regulation, such as had commercial sig-

nificance and value only within the Territory of Hawaii, or 'intrastate'." 40 Haw. at page 172.

This is a direct appeal from the decision. 28 U.S.C. § 1293.

█ While the appellants have challenged the findings in many respects, they have not brought up any of the evidence. In the circumstances, the presumption of correctness of the findings under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C., applies with great strictness. Rickard v. Thompson, 9 Cir., 1934, 72 F.2d 807, 809; United States v. Van Dusen, 8 Cir., 1935, 78 F.2d 121, 122; Gallagher's Steakhouse v. Bowles, 2 Cir., 1944, 142 F.2d 530, 531. However, in reality, the appellants are contending that it appears from the pleadings themselves that the tax to which they are subject is a burden on interstate commerce and not within the power of the Territory of Hawaii to exact. The statute involved is one imposing a tax upon sales, services and, in general, all types of business in the Territory measured by gross receipts. The portion material to this cause reads:

"Sec. 5455. Imposition of tax. There is hereby levied and shall be assessed and collected annually privilege taxes against the persons on account of their business and other activities in this Territory measured by the application of rates against values, gross proceeds of sales or gross income, as the case may be, as follows:

\* \* \* \* \* \*

"D. Tax upon theaters, amusements, radio broadcasting stations, etc. Upon every person engaging or continuing within this Territory in the business of operating a theater, opera house, moving picture show, vaudeville, amusement park, dance hall, skating rink, radio broadcasting station or any other place at which amusements are offered to the public, the tax shall be equal to two and one-half per

cent of the gross income of the business." Revised Laws of Hawaii, 1945, Chapter 101, § 5455, as amended by Laws Hawaii 1947, c. 111, § 9.

██ It cannot be disputed that the legislature of Hawaii may levy an excise tax. Brodhead v. Brothwick, 9 Cir., 1949, 174 F.2d 21. The question to determine is whether the tax burdens interstate commerce. The control of the Congress over interstate commerce is absolute. U. S. Constitution, Art. I, § 8, Cl. 3. So any direct interference with it by any State must give way. The Supreme Court has summed up the primacy of this power in the sentence:

"This power over commerce when it exists is complete and perfect." United States v. Rock Royal Co-op., Inc., 1939, 307 U.S. 533, 569, 59 S.Ct. 993, 1011, 83 L.Ed. 1446.

But the same court has stated that

"\* \* \* it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business, Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823. Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. A tax may be levied on net income wholly derived from interstate commerce. *Nondiscriminatory taxation of the instrumentalities of interstate commerce is not prohibited.* The like taxation of property, shipped interstate, before its movement begins, or after it ends, is not a forbidden

regulation. An excise for the warehousing of merchandise preparatory to its interstate shipment or upon its use, or withdrawal for use, by the consignee after the interstate journey has ended is not precluded." McGoldrick v. Berwind-White Coal Mining Co., 1940, 309 U.S. 33, 45, 60 S.Ct. 388, 392, 84 L.Ed. 565. (Emphasis added.)

So it is evident that there is a wide area in which the state may exercise its taxing power. And this includes even instrumentalities of interstate commerce. This has been an accepted principle since Cooley v. Board of Wardens of Port of Philadelphia, 1851, 12 How. 299, 13 L.Ed. 996, was decided. Ever since, state taxes on instrumentalities of interstate commerce have been sustained. We consider some illustrative cases showing the variety of tax statutes upheld over the course of years.

Statutes taxing the property of express companies. Pacific Exp. Company v. Seibert, 1892, 142 U.S. 339, 12 S.Ct. 250, 35 L.Ed. 1035; Postal Telegraph Cable Co. v. City Council of Charleston, 1894, 153 U.S. 692, 14 S.Ct. 1094, 38 L.Ed. 871; Osborne v. State of Florida, 1897, 164 U.S. 650, 17 S.Ct. 214, 41 L.Ed. 586; Adams Express Co. v. Ohio State Auditor, 1897, 165 U.S. 194, 17 S.Ct. 305, 41 L.Ed. 683; Williams v. City of Talladega, 1912, 226 U.S. 404, 33 S.Ct. 116, 57 L.Ed. 275; Wells Fargo & Co. v. State of Nevada, 1918, 248 U.S. 165, 39 S.Ct. 62, 63 L.Ed. 190.

Statutes taxing the property or the receipts from the operations of the property of a railroad. New York Central & H. R. R. Co. v. Miller, 1906, 202 U.S. 584, 26 S.Ct. 714, 50 L.Ed. 1155; St. Louis & East St. Louis Electric Ry. Co. v. State of Missouri ex rel. and to use of Hagerman, 1921, 256 U.S. 314, 41 S.Ct. 488, 65 L.Ed. 946; Southern R. Co. v. Watts, 1923, 260 U.S. 519, 43 S.Ct. 192, 67 L.Ed. 375; Western Maryland Railway Co. v. Rogan, 1951, 340 U.S. 520, 71 S.Ct. 450, 95 L.Ed. 501.

A tax on sleeping cars. Pullman Company v. Adams, 1903, 189 U.S. 420, 23 S.Ct. 494, 47 L.Ed. 877.

A tax on sale and production of electric power. Broad River Power Co. v. Query, 1933, 288 U.S. 178, 53 S.Ct. 326, 77 L.Ed. 685.

Similarly, the courts have sustained consistently taxes upon property destined for interstate commerce either before it leaves the State or after it reaches it. Illustrative is Heisler v. Thomas Colliery Co., 1922, 260 U.S. 245, 43 S.Ct. 83, 84, 67 L.Ed. 237, in which Pennsylvania subjected every ton of anthracite coal mined "washed or screened, or otherwise prepared for market" in the State to one and a one-half per cent tax of its value when prepared for market to be assessed after it is prepared as indicated and is "ready for shipment or market." Penn.Laws, 1921, page 479, 72 P.S.Pa. § 2501. And more recently, courts have sustained a tax on local advertising levied on publishers of newspapers and magazines, Western Live Stock v. Bureau of Revenue, 1938, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, and have permitted the application of a personal property tax on the entire fleet of airplanes of an airplane company, despite the fact that the planes, while home-based in the State, were in and out of the State during the year, none of them being continuously without the State during the whole tax year. Northwest Air Lines, Inc., v. State of Minnesota, 1944, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283. Various state "use-taxing" statutes have been upheld. Henneford v. Silas Mason Co., 1937, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814; Felt & Tarrant Mfg. Co. v. Gallagher, 1939, 306 U.S. 62, 59 S.Ct. 376, 83 L.Ed. 488; Southern Pacific Co. v. Gallagher, 1939, 306 U.S. 167, 169, 59 S.Ct. 389, 83 L.Ed. 586; Pacific Telephone & Telegraph Co. v. Gallagher, 1939, 306 U.S. 182, 59 S.Ct. 396, 83 L.Ed. 595; State of Alabama v. King & Boozer, 1941, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3; Curry v. United States, 1941, 314 U.S. 14, 62

S.Ct. 48, 86 L.Ed. 9. And see, State of California v. Thompson, 1951, 313 U.S. 109, 61 S.Ct. 930, 85 L.Ed. 1219 (regulating solicitation of business for interstate carriers); Brown v. Parker, 1943, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (conceding to the states the power to regulate local agricultural products destined for interstate commerce before they reach such commerce). And even where the same instrumentalities are used in inter and intrastate commerce, a tax on the local business based upon the gross income has been sustained. Pacific Telephone & Telegraph Co. v. Tax Commission, 1936, 297 U.S. 403, 56 S.Ct. 522, 80 L.Ed. 760. There, as here, there was no proof offered that the tax did, in fact, burden interstate commerce. McCaw v. Fase, 40 Haw. 121, 156. Reliance was on the fact that the intra and interstate business were so interwoven that the tax on gross receipts against telegraph companies and railroads admittedly engaged in interstate commerce was, of necessity, a burden on interstate commerce. The court rejected the contention in an opinion written by Mr. Justice Brandeis, in which, speaking for a unanimous court, he wrote:

> "Taxes for the privilege of doing local business measured by the gross income of such business have frequently been laid upon concerns engaged in both intrastate and interstate business; and have, for half a century, been sustained without inquiry whether withdrawal from the local business would compel discontinuance of the interstate. That an occupation tax upon a foreign telegraph company measured by earnings from its local business is valid was indicated as early as Western Union Telegraph Co. v. Texas, 105 U.S. 460, 464, 465, 26 L.Ed. 1067; and was definitely held in Ratterman v. Western Union Telegraph Co., 127 U.S. 411, 8 S.Ct. 1127, 32 L.Ed. 229, which has been repeatedly cited with approval, in cases involving interstate railroads

and telegraph companies. Similarly, in Southern R. Co. v. Watts, 260 U.S. 519, 529, 530, 43 S.Ct. 192, 67 L.Ed. 375, a so-called franchise tax for the privilege of doing intrastate business, measured by a percentage of the value of property subject also to an *ad valorem* tax, was sustained as against both foreign and domestic railroads.

> "No decision of this Court lends support to the proposition that an occupation tax upon local business, otherwise valid, must be held void merely because the local and interstate branches are for some reason inseparable." 297 U.S. at page 415, 56 S.Ct. at page 525. (Emphasis added.)

This case has decisive significance because it was decided at the same term as the decision on which the appellants rely chiefly, Fisher's Blend Stations, Inc., v. Washington State Tax Commission, 1936, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956. That decision was upon a demurrer to the complaint. The parties stipulated that the case might be submitted upon the facts recited in the complaint. The complaint showed that the State of Washington had imposed a tax on the gross receipts derived from broadcasting. Chapter 191, § 2, Wash. Laws of 1933. The allegations of the complaint indicated that the station broadcast within the "Fifth Zone" comprising eleven western and northwestern states, including Washington and the Territories of Alaska and Hawaii, it being licensed as a clear channel station, a station to which, the opinion says:

> " * * * the Commission has assigned a radio frequency to be used at such times and with such power as will enable it to broadcast throughout the United States without interference by other stations." 297 U.S. at page 652, 56 S.Ct. at page 608.

The Court held that, as the income was derived from interstate commerce and

there was nothing in the complaint to show that an attempt was made to segregate the receipts received from local broadcasts, the tax was invalid. The gist of the opinion is in the following paragraph:

"As appellant's income is derived from interstate commerce, the tax, measured by appellant's gross income, is of a type which has long been held to be an unconstitutional burden on interstate commerce. * * It is enough that the present is not such a tax, but is levied on gross receipts from appellant's entire operations, which include interstate commerce. As it does not appear that any of the taxed income is allocable to intrastate commerce, the tax as a whole must fail, Cooney v. Mountain States Tel. & Tel. Co., supra [294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934]; cf. Pacific Tel. & Tel. Co. v. Washington, supra [297 U.S. 403, 56 S.Ct. 522, 80 L.Ed. 760], and the judgment of the state court must be reversed and the case remanded for further proceedings not inconsistent with this opinion." 297 U.S. at pages 655–656, 56 S.Ct. at pages 610.

■ It can be seen readily that the Hawaii tax is of a different character. The trial court found that the station operates within the Territory and the Supreme Court of Hawaii, in sustaining the judgment of the trial court, made special reference to the findings and found that any income from short-wave relays was specifically excluded, saying:

"The tax is upon the business of radio broadcasting 'within this Territory', measured by the gross income of such business. This excludes broadcasts between points in the Territory and points outside the Territory. * * * The tax commissioner has assessed the tax accordingly by excluding therefrom receipts of KPOA from short-wave relays being broadcast between points in the Territory and points outside the Territory and by including and

thus subjecting to the tax only receipts of the station from its 'standard wave' broadcasts, which latter are of commercial value only within and not outside the Territory." McCaw v. Fase, supra, 40 Haw. at page 715.

We, therefore, have an authoritative finding by a territorial court approved by the highest court of the Territory which distinctly says that not only the statute itself, but also the practices under it, limit the tax to income from local activities only. Such interpretation must be followed by us. Osborne v. State of Florida, 1897, 164 U.S. 650, 654, 17 S.Ct. 214, 41 L.Ed. 586; J. Bacon & Sons v. Martin, 1939, 305 U.S. 380, 59 S.Ct. 257, 83 L.Ed. 233.

■■ It is quite evident that a tax capable of such application is not a burden on commerce. And any general statement in Fisher's Blend Station, Inc., v. State Tax Commission, 1936, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956, as to the nature of radio communication must be restricted to the context of the statute there under consideration and the pleadings under which the case was decided. Granted that the Congress has preempted the radio field, National Broadcasting Co. v. United States, 1943, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344, and that the Communications Act requires federal licensing, even for stations which operate from one place in any territory to another place in the territory, 47 U.S.C.A. § 301, these facts do not make the individual stations agencies of the Government immune from state taxation. Broad River Power Co. v. Query, 1933, 288 U.S. 178, 53 S.Ct. 326, 77 L.Ed. 685; Buckstaff Bathhouse Co. v. McKinley, 1939, 308 U.S. 358, 60 S.Ct. 279, 84 L.Ed. 322. And the character of radio communication does not prohibit a tax upon the state business any more than the interstate character of railroads, power companies, telephone, telegraph and express companies stands in the way of valid tax statutes of the type under discussion. For such a tax does not "aim to control" interstate commerce. Free-

man v. Hewit, 1946, 329 U.S. 249, 254, 67 S.Ct. 274, 277, 91 L.Ed. 265.

In Whitmore v. Bureau of Revenue, 1946, D.C.N.Mex., 64 F.Supp. 911, affirmed in Whitmore v. Ormsbee, 329 U.S. 668, 67 S.Ct. 62, 91 L.Ed. 589, a three-judge court, in dismissing an action involving the New Mexico business privilege tax which levied a tax in an amount equal to two per cent of the gross receipts upon the business of radio broadcasting, § 76–1404 N.Mex.Stats.1941, stated that broadcasting was both intra and interstate in these words:

> "Plaintiffs are engaged in radio broadcasting; and, while their stations are located in New Mexico, the electro-magnetic waves transmitted from their respective stations cross state lines and their programs are heard by listeners both in New Mexico and in other states. Therefore, the business in which they are engaged is essentially in part intrastate commerce and in part interstate commerce. Fisher's Blend Station v. Tax Commission of State of Washington, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956." 64 F.Supp. at page 916.

The teaching of these cases is also that measures which partake of regulation are in a different category from purely taxing measures which have none of the indicia of regulation. A taxing statute may, of course, be an attempt to control the commerce field in which the primacy is that of the federal government. But a tax such as the tax under consideration has no regulatory feature. Its only effect could be the increase of the cost of doing business which has never affected the validity of state taxing statutes. In sum, the arguments advanced by the appellants are adequately answered in one of the latest decisions of the Supreme Court, City of Chicago v. Willett Co., 1953, 344 U.S. 574, 73 S.Ct. 460, 97 L.Ed. 559, in which the court found valid a license tax on trucks operated within the city. It is to be noted that in the main opinion, Mr. Justice Frankfurter interpreted the meaning of the Pacific Telephone and Telegraph case in accordance with the views of the Supreme Court of Hawaii, with which we express agreement:

> "Thus, as regards the main point pressed by respondent, the Chicago tax avoids the infirmity laid bare by the Sprout case, and meets the facts of Osborne v. State of Florida, supra [164 U.S. 650, 41 L.Ed. 586], and Pullman Co. v. Adams, supra [189 U.S. 420, 23 S.Ct. 494, 47 L.Ed. 877], as did the Pacific Telephone case, [Pacific Tel. & Tel. Co. v. Tax Commission, 297 U.S. 403, 56 S.Ct. 522, 80 L.Ed. 760]. Again, as in Pacific Telephone, the taxpayer here makes no showing that the tax, though directed at intrastate business only, in fact burdens interstate commerce. This is for the taxpayer to show affirmatively and respondent has made no attempt to do so.
>
> "But, if it were necessary to decide on the basis of the 'nice distinctions' urged upon us, we could not rest without more on the authority of Pacific Telephone. For the tax in that case was measured by a percentage of the gross income drawn solely from intrastate business. Although the taxpayer's intrastate and interstate activities were inseparable, the tax was not laid inseparably on both. 297 U.S. at page 414, 56 S.Ct. at page 525, 80 L.Ed. 760. That is not true in this case. Here the tax falls inseparably on what have been called instrumentalities of interstate commerce, which are at once also those of intrastate commerce. Whatever intrinsic significance this difference may have in other situations, it becomes irrelevant in a case controlled, as is this one, by the governing principles of New York Central & H. R. R. Co. v. Miller, supra [202 U.S. 584, 26 S.Ct. 714, 50 L.Ed. 1155]." 344 U.S. at page 578, 73 S.Ct. at page 462.

In the foregoing we have sought to show that federal precedents sustain the view of the Hawaii courts. We did not

refer to several decisions in which state courts have sustained taxes on local radio broadcasting where the local business was clearly separable from the interstate business. However, there are such decisions.

Dorsky v. Brown, 1951, 255 Ala. 238, 51 So.2d 360, certiorari denied 342 U.S. 818, 72 S.Ct. 34, 96 L.Ed. 619, in which a state tax on a coin operated radio was held not to violate the commerce clause.

City of Atlanta v. Oglethorpe University, 1934, 178 Ga. 379, 173 S.E. 110, in which a municipal license tax was applied to a college broadcasting station.

W.D.O.D. Broadcasting Corp. v. Stokes, 1941, 180 Tenn. 677, 177 S.W.2d 837, in which a statute of Tennessee levying a tax on gross receipts was applied to a domestic broadcasting company.

Beard v. Vinsonhaler, 1949, 215 Ark. 389, 221 S.W.2d 3, appeal dismissed, 338 U.S. 863, 70 S.Ct. 146, 94 L.Ed. 529, rehearing denied 338 U.S. 896, 70 S.Ct. 239, 94 L.Ed. 551, in which a license tax on the business of radio broadcasting and on persons soliciting advertising for radio was sustained. Interpreting the statute as a valid exercise of the taxing power, the Arkansas court said:

"* * * A substantial part of the appellees' programs originate locally and are of purely local interest. To that extent the appellees are engaged in a local enterprise readily separable from their interstate activity. Should they confine their broadcasts to programs brought in from other states there might be force to their suggestion that interstate commerce is being taxed. But as long as they conduct an essentially intrastate business as well, we see no reason why they should not bear their share of the cost of municipal advantages admittedly received. It is shown that daily newspapers pay an annual tax of $1000, although some of their papers go beyond the State boundaries. The telephone company's tax is $45,000, though its business is interstate as well as intrastate. By comparison the appellees' tax is moderate in amount. It is not even suggested that the sum exceeds the profits derived from local business, so that interstate receipts are to some extent affected." 221 S.W.2d at pages 4–5.

A direct appeal was sought to the Supreme Court from this case. This was denied in a *per curiam* decision which bore this very significant legend:

"The appeal is dismissed for want of a substantial federal question. Crutcher v. Commonwealth of Kentucky, 141 U.S. 47, 11 S.Ct. 851, 35 L.Ed. 649."

The Judicial Code allows a direct appeal to the Supreme Court "where there is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States and the decision is in favor of its validity." 28 U.S.C. § 1257(2).

So the court was bound to entertain the appeal if it felt that the statute violated any constitutional provision. As the court could see no question of violation of the commerce clause in the Arkansas statute, the appeal was dismissed. See, Palmer Oil Corp. v. Amerada Petroleum Corp., 1952, 342 U.S. 35, 72 S.Ct. 11, 96 L.Ed. 47.[1]

1. The Kentucky case referred to in the memorandum, Crutcher v. Kentucky, 1891, 141 U.S. 47, 11 S.Ct. 851, 35 L.Ed. 649, involved a tax imposed by the legislature upon the agencies of foreign express companies. The statute, in addition to providing for the payment of a license fee, required a showing on the part of the agent of the express company that the company was possessed of an actual capital of at least $150,000.00. The Supreme Court's reference to this case directs attention to a statute which, under the guise of tax seeks to make what Mr. Justice Frankfurter in Freeman v. Hewit, 1946, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265, called "a levy upon the very process of commerce across State lines by pointing to a similar hobble on its local trade." 329 U.S. at page 254, 67 S.Ct. at page 277. The tax under challenge in the case before us is not of that character.

It is clear from what precedes that the tax levied by the Legislature of the Territory of Hawaii is a valid and constitutional tax as applied to the local broadcasting business of the appellants and that the Supreme Court of the Territory of Hawaii was correct in sustaining the judgment of the territorial trial court which so held.

The judgment of the Supreme Court of the Territory of Hawaii is therefore affirmed.